**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

_____

CASSANDRA LYNN HOVLAND,

                     Plaintiff,

        vs.

CHRIS GARDELLA, individually and
as agent for Lincoln County;
MARK JACOBSON, individually and
as agent for Lincoln County,
JOSH HARTH, individually and
as agent for Lincoln County,
DARRELL ANDERSON, individually and
as agent for Lincoln County,
CLAY COKER, individually and
as agent for the City of Libby,
BOYD WHITE, individually and
as agent for the City of Libby,
CITY OF LIBBY, a political subdivision
of the State of Montana,
LINCOLN COUNTY, a political subdivision
of the State of Montana, and
JOHN DOES I-X,

                    Defendants.

CAUSE NO. CV 06-50-M-DWM-JCL

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE

_____

      Pending before the Court is Defendant Josh Harth's Motion to

Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

Having reviewed the briefs and the record in this case, the Court

hereby enters the following:

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 1

**RECOMMENDATION**

Defendant Josh Harth's Motion to Dismiss should be **GRANTED** and all of Hovland's claims against Harth should be **DISMISSED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DATED this 12th day of June, 2008.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

**ANALYSIS**

**I.  BACKGROUND**

This case has its genesis in the stop and search of the Plaintiff Cassandra Hovland's vehicle by deputies of the Lincoln County, Montana sheriff's department.  On February 6, 2004, Deputy Mark Jacobson was contacted by an anonymous caller who advised Jacobson that Hovland was in the possession of methamphetamine.  Jacobson, who was off duty at the time, conveyed the information to on-duty deputy Chris Gardella.  Subsequently, Gardella observed Hovland driving a minivan and

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 2

effected a stop of the van purportedly for speeding.  First
Amended Compl., dkt. # 44, ¶ 17.  Hovland alleges that after she
twice refused Deputy Gardella permission to search her vehicle,
she was handcuffed and placed in the rear of Gardella's patrol
vehicle.  *Id*. at ¶ 18.  Hovland further alleges that about the
time she was restrained, a second deputy, Josh Harth, arrived at
the scene and "participated in the subsequent searches of
Plaintiff's minivan[.]"  *Id*. at ¶ 19.

Hovland proceeds to describe how Deputy Gardella allegedly
conducted an illegal search of Hovland's vehicle and personal
effects which resulted in Gardella discovering methamphetamine
located in a "film canister", as well as $1,000 in cash.  *Id*. at
¶ 20.  Hovland states she was deceived into signing a consent-to-
search form which Hovland believed granted Gardella permission to
search only the "main compartment" of her backpack.  *Id*. at ¶ 22.
Hovland alleges that after securing the form, Gardella returned
to the vehicle and placed the film canister containing the
methamphetamine and other items of contraband found throughout
the vehicle into the "main compartment" of the backpack.  *Id*. at
¶ 23.  Deputy Gardella then effected the arrest of Hovland.  *Id*.
at ¶ 26.

It is important to note that none of the operative
allegations of Hovland's complaint describing the search
conducted by Deputy Gardella reference any actions undertaken by

Deputy Harth.  Hovland proceeds to allege, however, that while the two deputies were waiting for a tow truck to arrive, Deputy Gardella "made [Deputy] Harth understand that he had planted the meth" illegally and that Harth undertook no action to "prevent Gardella from his illegal, malicious actions[.]"  *Id*. at ¶¶ 27-28.  According to Hovland, "[Deputy] Harth negligently, unlawfully and wrongfully failed to convey his knowledge of [Gardella's actions] to his supervisor(s) and/or others in charge" and thereby "acted in concert" with the other Defendants to wrongfully prosecute Hovland "for crimes she did not commit." *Id*. at ¶ 29.

Hovland's pleading alleges that various individuals obtained knowledge of Deputy Gardella's illegal actions, including Deputy Jacobson and Lincoln County Sheriff Darrell Anderson.  On February 6, 2004, Gardella informed Jacobson about his unlawful conduct during his search of Hovland's vehicle.  Gardella allegedly also told Jacobson that he would falsify his reports to justify his conduct and the resulting criminal charges to be filed against Hovland.  Additionally, at some point thereafter Jacobson conveyed his knowledge of Deputy Gardella's conduct to Sheriff Anderson.  Despite being informed of Gardella's actions Hovland alleges Sheriff Anderson "negligently, wrongfully and unlawfully failed" to prevent or correct the illegal actions. First Amended Compl. at ¶ 32.

Hovland was charged in the Montana Nineteenth Judicial District Court, Lincoln County, with the following criminal offenses:  (1) felony criminal possession of dangerous drugs; (2) misdemeanor criminal possession of drugs; (3) felony criminal possession of drug paraphernalia; (4) misdemeanor driving while license suspended or revoked; and (5) misdemeanor failure to show proof of insurance.  As a result of the charges Hovland states she was held in custody, admitted to the Montana Chemical Dependency Center, and confined to a half-way house until approximately June 25, 2004, when she was released from custody.

Eventually, Deputy Gardella's conduct came to light in Hovland's criminal proceedings through the efforts of various individuals who had knowledge of Gardella's conduct.  On June 25, 2004, the same day Hovland had an appearance in court and the same day Hovland was released from custody, Deputy Jacobson informed the Lincoln County prosecutor about Gardella's illegal conduct.[1]

In light of Deputy Gardella's alleged illegal conduct, Hovland's defense counsel filed a motion in her criminal case on July 19, 2004, to suppress all evidence Gardella seized from Hovland's vehicle on February 6, 2004.  Consequently, at the very latest Hovland was aware on July 19, 2004, that Deputy Gardella had illegally moved physical evidence and lied about his conduct

---

[1]Hovland's First Amended Complaint does not provide any information explaining the reason for her release on June 25, 2004.

during the February 6 search of her vehicle.  Based in part on

information provided by Deputy Jacobson, Deputy Lincoln County

Attorney Robert Slomski filed a response to the motion stating

that "the State does not oppose the Motion to Suppress filed by

[Hovland]."  First Amended Compl., Ex. 2.  On July 30, 2004,

District Judge Michael Prezeau issued an Order in Hovland's

criminal case granting her motion to suppress based on the

State's concurrence with the motion.  *Id.*, Ex. 3.

On December 6, 2005, Deputy Lincoln County Attorney Slomski

filed a motion to dismiss the criminal charges against Hovland.

First Amended Compl., Ex. 5.  The motion was based on the grounds

that the evidence against Hovland had been suppressed.  *Id.*  On

December 6, 2005, District Judge Prezeau issued an order granting

the motion and dismissing all the criminal charges against

Hovland.  *Id.*, Ex. 6.

The second aspect of Hovland's complaint relates to alleged

transgressions by certain Defendants while Hovland was held in

jail.  Hovland asserts that her incarceration was illegal and,

therefore, all Defendants are liable for any incidents of assault

or battery which took place at the jail.

In addition to Deputies Jacobson, Gardella, and Harth,

Hovland also named other Defendants in her amended complaint

including Lincoln County Sheriff Darrell Anderson, Lincoln

County, the City of Libby, and City of Libby Police Officers Clay

Coker and Boyd White.  The only Defendants remaining in this action, however, are Gardella, Jacobson, Lincoln County Sheriff Darrell Anderson, and Lincoln County.[2]

Hovland advances nine causes of action in her First Amended Complaint against the Defendants collectively.  Count 1 asserts a cause of action for false arrest or imprisonment, Court 2 asserts a claim for malicious prosecution, and Count 3 alleges Defendants are liable for either the negligent or intentional infliction of emotional distress.  None of those three Counts expressly allege Harth had any direct involvement in those claims.

Counts 4 and 5 allege Defendants violated Hovland's civil rights under both the United States Constitution and the Montana Constitution.  Specifically, Hovland alleges Defendants detained, arrested, and imprisoned her without probable cause, thereby violating (1) her right against unreasonable searches and seizures, (2) her right against cruel and unusual punishment, and (3) her right to due process as protected under both Constitutions.  Hovland also alleges the Defendants violated her rights of privacy and individual dignity as protected under the Montana Constitution.

In Count 6 of her pleading Hovland alleges Defendants are liable for negligence, gross negligence, and negligence per se.

---

[2]Pursuant to Order entered March 14, 2008, District Judge Donald W. Molloy dismissed Defendants White and Coker. Additionally, on May 14, 2008, Judge Molloy entered an Order dismissing Defendant City of Libby pursuant to Hovland's motion.

Hovland cites to various state statutory criminal law provisions and alleges generally that Defendants committed various degrees of negligence in violation of the applicable standards of care.

Count 7 of Hovland's pleading alleges Defendants committed assault and battery against her.  The context of her allegations, however, refer only to conduct committed by unidentified jail officers during Hovland's incarceration.

In Count 8 Hovland alleges all Defendants acted in concert in all respects.  All Defendants offered substantial assistance or encouragement to the other Defendants, and each Defendant passively acted in concert with the other Defendants by remaining silent and failing to inform authorities of the other Defendants' illegal actions.

Finally, in Count 9 Hovland alleges Defendants are liable to her for punitive damages.

## II.  APPLICABLE LAW - MOTION TO DISMISS - Rule 12(b)(6)

A claim may be dismissed under Fed. R. Civ. P. 12(b)(6) either because it asserts a legal theory that is not cognizable as a matter of law, or because it fails to allege sufficient facts to support an otherwise cognizable legal claim.  *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).  In addressing a Rule 12(b)(6) challenge the Court accepts all factual allegations in the complaint as true (*Hospital Bldg. Co. v. Trustees of the Rex*

*Hospital*, 425 U.S. 738, 740 (1976)), and construes the pleading in the light most favorable to the nonmoving party. *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989). "[D]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Schneider v. California Department of Corrections*, 151 F.3d 1194, 1196 (9th Cir. 1998) (quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint need only set forth a short and plain statement of the claim showing the pleader is entitled to relief, and it "does not need detailed factual allegations[.]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). Nevertheless, a plaintiff must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id*. at 1965. Allegations must indicate the pleader has a right to relief, and they must rise above the level of mere speculation. *Id*. The pleading must at least set forth factual grounds supporting a plausible basis on which liability can be imposed, or it must set forth enough facts "to raise a reasonable expectation that discovery will reveal evidence of" a basis for liability. *Id*. Even if a court believes actual proof of the facts alleged is improbable, or that

recovery is remote or unlikely, a pleading should still survive
dismissal. *Id*.

Nonetheless, dismissal can be granted if there is a lack of
a cognizable legal theory or if there is an absence of sufficient
facts alleged under a cognizable legal theory. *Robertson v. Dean
Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Even a
liberal interpretation of a civil rights complaint may not supply
essential elements of a claim that the plaintiff failed to plead
initially. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir.
1982). Additionally, the Court is not required to accept legal
conclusions cast in the form of factual allegations if those
conclusions cannot reasonably be drawn from the facts alleged.
*Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.
1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

A statute of limitations defense can be resolved on a Rule
12(b)(6) motion.[3] A complaint may be dismissed under Rule
12(b)(6) "'if the assertions of the complaint, read with the
required liberality, would not permit the plaintiff to prove that
the statute was tolled.'" *Morales v. City of Los Angeles*, 214
F.3d 1151, 1153 (9th Cir. 2000) (citation omitted).

---

[3]Harth cites to Fed. R. Civ. P. 12(b)(1) in support of his
Motion to Dismiss, but without explanation. Presumably, Harth
cites to Rule 12(b)(1) on the basis the statute of limitations bar
would deprive the Court of jurisdiction over this case.
Nevertheless, the Court will instead resolve the statute of
limitations issues under Fed. R. Civ. P. 12(b)(6) and the authority
cited herein.

## III.  DISCUSSION

### A.  Statutes of Limitations

Harth moves to dismiss Hovland's First Amended Complaint on the basis her various state and federal claims for relief are barred by the specific statute of limitations applicable to each claim.  Harth contends Hovland failed to commence this civil action against him within the applicable periods of limitations following the accrual of each cause of action.

The Court is exercising supplemental jurisdiction, pursuant to 28 U.S.C. 1367(a), over the majority of Hovland's claims which are cognizable under, and governed by Montana law.  In Montana a statute of limitations period begins when the claim or cause of action accrues, and such accrual occurs "when all elements of the claim or cause exist or have occurred[.]"  Mont. Code Ann. § 27-2-102(1)(a) and (2).  A plaintiff's "[l]ack of knowledge of the claim or cause of action, or of its accrual[...] does not postpone the beginning of the period of limitation."  Mont. Code Ann. § 27-2-102(2).  A cause of action is commenced for purposes of the statute of limitations when the complaint is filed.  Mont. Code Ann. § 27-2-102(2).

With respect to Hovland's claims under 42 U.S.C. § 1983, federal law governs the Court's statute of limitations analysis applicable to those claims.  Specifically, the issue of when a claim under § 1983 accrues is determined pursuant to federal law.

*Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004). Comparable to Montana law, under federal law "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* Additionally, an action is commenced and the limitations period is tolled when the complaint is filed pursuant to Fed. R. Civ. P. 3. *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002).

In this case Hovland filed her First Amended Complaint advancing claims against Harth on October 26, 2007. Therefore, that is the date on which Hovland "commenced" her action against Harth with respect to all of her state and federal claims for purposes of the Court's statute of limitations analysis.

### 1. Statute of Limitations Analysis of Individual Claims

#### a. Counts 1 and 7 - False Arrest/Imprisonment, Assault and Battery

Hovland alleges Defendants are liable for her false arrest on February 6, 2004, and her subsequent false imprisonment until she was released on June 25, 2004. False arrest and false imprisonment are indistinguishable causes of action (*Harrer v. Montgomery Ward & Co.*, 124 Mont 295, 305, 221 P.2d 428, 433 (1950)), and the applicable statute of limitations begins to run when the plaintiff's alleged false imprisonment came to an end. *Wallace v. Kato*, ___ U.S. ___, 127 S.Ct. 1091, 1096 (2007). Assuming Harth could be held liable for acting in concert with

Gardella relative to his initial arrest and imprisonment of Hovland, her imprisonment ended, and her cause of action accrued, on June 25, 2004.

Hovland also alleges Defendants are liable for assault and battery as a result of their physical contact with her during her incarceration or custody at the Lincoln County Jail which ended on June 25, 2004.  Even assuming Harth could have some potential liability for the alleged assault and battery incidents, Hovland's cause of action accrued by June 25, 2004, when she was released from custody.

The statute of limitations applicable to claims for false imprisonment, assault and battery is 2 years.  Mont. Code Ann. § 27-2-204(3).  Therefore, Hovland's October 26, 2007 filing of her amended pleading against Harth asserting these claims is barred by the statute of limitations.

> **b.   Count 4 – Civil Rights Violations Under the United States Constitution - 42 U.S.C. § 1983 – State and Federal Duty to Protect Claims**

The statute of limitations applicable to a claim under 42 U.S.C. § 1983 "is the forum state's statute of limitations for personal injury actions."  *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).  *See also Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).  In Montana the personal injury statute of limitations is 3 years.  Mont. Code. Ann. § 27-2-204(1).

As discussed herein, Harth's only affirmative actions or conduct which he personally committed towards Hovland would have ended, at the very latest, by June 25, 2004, when Hovland was released from custody.  However, viewing Hovland's allegations in the light most favorable to her, the Court could construe her pleading to allege that Harth has ongoing liability for Gardella's unlawful search and seizure of evidence from Hovland on February 6, 2004, based on Harth's alleged participation in Gardella's actions on that date.  Even assuming Harth is subject to such ongoing liability based on the alleged illegally obtained evidence, the state court entered an order on July 30, 2004, suppressing that evidence.  Therefore, even affording Hovland the benefit of the doubt, any federal civil right claim arising out of Harth's alleged wrongful search and seizure conduct accrued by July 30, 2004, at the latest.

This same analysis applies's to Hovland federal civil rights claim, and her state law claim alleging Harth had a duty to protect her from the consequences of Deputy Gardella's illegal actions.  Hovland alleges Harth violated this duty by failing to notify his supervisors that Gardella had conducted an illegal search which rendered the criminal prosecution, and related incarceration invalid.

Construing Hovland's allegations in the light most favorable to her, the Court will assume, without deciding, that her pleading states valid state and federal claims for relief

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 14

satisfying an exception to the general rule that law enforcement officers have no general duty to protect an individual from the conduct of others.  *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699-700 (9th Cir. 1988) (stating the general rule and identifying exceptions to the general rule); *Nelson v. Driscoll*, 199 MT 193, ¶¶ 21-22, 295 Mont. 363, ¶¶ 21-22, 983 P.2d 972, ¶¶ 21-22 (quoting *Day v. State*, 980 P.2d 1171, 1175 (Utah 1999)) (same).

Even assuming Hovland states claims on which relief could be granted based on Harth's failure to protect her, her cause of action accrued more than 3 years prior to October 26, 2007. Hovland's First Amended Complaint establishes that she knew by July 30, 2004, at the latest, when the state court suppressed the evidence against her, that Gardella illegally searched her vehicle, with Harth's participation, and that Harth had failed to protect her against Gardella's illegal actions.  By that time Deputy Jacobson, the Deputy Lincoln County Attorney, and Judge Prezeau had essentially come to her rescue by suppressing the evidence which was obtained illegally through Gardella's actions. The fact that Hovland's criminal charges were not dismissed until December 6, 2005, cannot be attributable to either Gardella's or Harth's alleged wrongful conduct because following the July 30, 2004 suppression of the evidence there was nothing further Harth could have done to remedy the consequences of Gardella's actions.

From July 30, 2004, until December 6, 2005, the decision to dismiss the charges was within the discretion of the Lincoln County Attorney pending further investigation and the existence of any other evidence in support of the charges.  Therefore, by July 30, 2004, all elements of any alleged claim for Harth's breach of his duty to protect Hovland existed, and Hovland knew, or had reason to know, she had been injured by Harth's alleged failure to protect her.  Hovland's duty to protect claims are barred by Montana's 3-year statute of limitations set forth in Mont. Code Ann. § 27-2-204(1).

Hovland argues that her federal civil rights claims against Harth are not time barred because those claims have not yet accrued.  She believes her civil rights claims have not accrued because there has never been a judgment entered in her criminal proceedings.  Hovland relies on *Morales v. City of Los Angeles*, 214 F.3d 1151 (9th Cir. 2000) in support of her accrual argument.

The *Morales* case, however, does not support Hovland's argument for delaying the accrual of her federal civil rights causes of action.  In *Morales* the plaintiffs filed lawsuits alleging that state actors violated their due process right of access to the courts through their wrongful conduct in prior lawsuits which caused the dismissal of the prior lawsuits. Consistent with federal law on the accrual of a cause of action the court in *Morales* stated that the primary question in *Morales* was a determination of when the plaintiffs knew or should have

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 16

known of the injury which gave rise to their cause of action for deprivation of their right of access to the court. *Morales*, 214 F.3d at 1154. Under federal law, a "claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm[,]" not when a plaintiff obtains subsequent judicial verification that a defendant's conduct is wrongful. *Id*. (quoting *Veal v. Geraci*, 23 F.3d 722, 724 (2nd Cir. 1994)). Accordingly, the court in *Morales* held that the plaintiffs' cause of action for a denial of their right of access to the courts accrued at the point when they knew "that the alleged misconduct actually caused concrete injury[]" which was at the time the judgment was entered against the plaintiffs in the underlying prior lawsuits. *Morales*, 214 F.3d at 1154.

Under the circumstances of this case, the accrual of the civil rights causes of action Hovland advances does not depend on the entry of a judgment in her underlying criminal action to give her notice of an injury. The mere entry of a judgment would amount to nothing more than judicial verification of the injury she already knew she suffered, or of the cause of her injury which she already knew.

Under the circumstances of this case, even giving Hovland the benefit of the doubt, Hovland knew of Harth's alleged wrongful conduct relative to her arrest and the search and seizure of evidence from her vehicle no later than July 30, 2004.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 17

Under federal law her federal civil rights causes of action accrued as of that date and her October 26, 2007 First Amended Complaint is barred by the 3-year statute of limitations.

### c.   Counts 5 and 6 - Montana Constitution and Negligence

Although Hovland alleges all Defendants are liable for violations of her rights under the Montana Constitution and for negligence, the only allegations against Harth are that he participated in the illegal searches and seizures, and the unlawful arrest of Hovland, all of which occurred on February 6, 2004.  Alternatively, Hovland's claims could have arisen out of Harth's involvement with the illegally seized evidence which was suppressed by the state court on July 30, 2004.  Therefore, all of Hovland's claims under the Montana Constitution and for negligence accrued by July 30, 2004, at the latest.  Hovland's Montana Constitutional and negligence claims are subject to the 3-year statute of limitations imposed by Mont. Code Ann. § 27-2-204(1) which bars Hovland's October 26, 2007 pleading.

### d.   Count 3 - Emotional Distress

Hovland asserts that all Defendants are liable for their infliction of emotional distress on her.  As discussed above, Harth's only alleged conduct he committed against Hovland ended by June 25, 2004, or by July 30, 2004, when the illegally obtained evidence was suppressed.

Hovland argues the statute of limitations has not expired on her emotional distress claim because she continues to suffer emotional distress to this day.  Therefore, she contends that under a continuous tort theory her cause of action for emotional distress has not yet fully accrued.

The continuous tort theory for the accrual of a cause of action does not apply to Hovland's emotional distress claim. Although a new cause of action can arise where a continuing tortious act causes new, additional, and discrete damages, in a case such as this where a plaintiff merely alleges continued suffering from a prior discrete incident, such continued suffering does not result from independent discrete incidents which would otherwise give rise to a new accrual date and a new cause of action.  *Gomez v. State*, 1999 MT 67, ¶ 20, 293 Mont. 531, ¶ 20, 975 P.2d 1258, ¶ 20.  A continuing tort theory does not apply to delay the accrual of a cause of action based only on the theory that injuries or damages continued for a lengthy period of time following the tortious conduct.  *Johnson v. Barrett*, 1999 MT 176, ¶¶ 19-21, 295 Mont. 254, ¶¶ 19-21, 983 P.2d 925, ¶¶ 19-21.  Additionally, the use of a continuing tort theory under the circumstances of this case is also contrary to the policy underlying the statutes of limitations in Montana which is to suppress stale claims.  *Gomez*, at ¶ 25.

Contrary to Hovland's continuing tort theory, her cause of action for emotional distress accrued "when all elements of the claim or cause exist or have occurred[.]"  Mont. Code Ann. § 27-2-102(1)(a) and (2).  Harth's alleged conduct in inflicting emotional distress on Hovland occurred, at the latest, by July 30, 2004.  The statute of limitations applicable to the tort of either intentional or negligent infliction of emotional distress is 3 years as provided by Mont. Code Ann. § 27-2-204(1).  Therefore, Hovland's emotional distress cause of action against Harth is barred by the statute of limitations.

### e.   Count 8 - Acting in Concert

In Count 8 of her First Amended Complaint Hovland alleges all Defendants, including Harth, acted in concert with each other and, therefore, are liable for all the torts committed by each of the other Defendants.  Hovland alleges Harth committed affirmative acts in concert with Gardella during the initial traffic stop and the subsequent illegal searches and seizures that Gardella conducted relative to Hovland's vehicle and its contents.  Hovland also alleges Harth acted in concert with all the other Defendants through his silence and failure to notify his supervisors of Gardella's illegal actions.

Finally, Hovland alleges Harth acted in concert with all other Defendants in connection with the alleged wrongful and malicious prosecution of Hovland for various criminal offenses.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 20

Hovland does not, however, allege any actions Harth committed relative to the malicious prosecution claim.  Hovland instead contends that Harth's passive conduct in remaining silent and not notifying appropriate authorities of her situation and not preventing the criminal prosecution is sufficient to impose malicious prosecution liability on Harth.

First, with respect to Hovland's allegations that Harth acted in concert with the other Defendants' alleged malicious prosecution conduct, such allegations fail on their merits.  For the reasons discussed below relative to the merits of Hovland's malicious prosecution claim, those allegations, on their face, defeat her allegations that Harth acted in concert with any other Defendant to maliciously prosecute her.  Since Hovland fails to state a claims for malicious prosecution against Harth, Hovland's statute of limitations argument asserting that such cause of action against Harth accrued as late as December 6, 2005, fails.

Second, even accepting Hovland's acting-in-concert allegations as true, and construing them in her favor, Hovland's October 26, 2007 pleading was untimely filed.  Assuming, without deciding, that Hovland sufficiently alleges that Harth is jointly liable for acting in concert under the authority of *Sloan v. Fauque*, 239 Mont. 383, 784 P.2d 895 (Mont. 1989), the accrual of any cause of action based on those viable allegations occurred in a time frame which renders the claims barred by the applicable

statute of limitations.  The only affirmative actions allegedly
taken by Harth were his joint participation on February 6, 2004,
in (1) the traffic stop of Hovland, (2) the subsequent search and
seizure of Hovland's vehicle, and (3) the arrest of Hovland.
However, as established above the accrual of any cause of action
against Harth for acting in concert occurred by June 25, 2004,
when Hovland was released from custody, or, at the latest, on
July 30, 2004, when Judge Prezeau suppressed the evidence
obtained against Hovland.  Therefore, Hovland's October 26, 2007
pleading is barred by the 3-year statute of limitations in Mont.
Code Ann. § 27-2-204(1).

> **2.   Relation Back of Hovland's Allegations Against Harth**

Although Hovland "commenced" her action against Harth on
October 26, 2007, after the expiration of the various statutes of
limitations discussed above, Hovland argues that her allegations
against Harth relate back, pursuant to Fed. R. Civ. P. 15(c)(1),
to the date she filed her original Complaint.  Hovland commenced
this action in the Montana Nineteenth Judicial District Court,
Lincoln County, when she filed her original Complaint on February
1, 2006.  In that Complaint Hovland named Chris Gardella, Mark
Jacobson, and Lincoln County as the only three Defendants in the
lawsuit.  Although Hovland could have, she did not name or

identify any John Doe defendants.[4]   The named Defendants removed
the action to this Court on March 24, 2006, in accordance with
the procedures under 28 U.S.C. § 1441, et seq.

On October 26, 2007, Hovland filed her First Amended
Complaint as captioned above.  That pleading was the first time
Hovland named Josh Harth as a Defendant in this action.
Hovland's First Amended Complaint continues to name Gardella,
Jacobson, and Lincoln County as Defendants in this case, and her
amended complaint did not operate to substitute Harth for any
previously named Defendant.

Rule 15(c) of the Federal Rules of Civil Procedure is the
only procedural vehicle for Hovland to amend her original
pleading to add new parties after expiration of the statutes of
limitations, provided her amendment satisfies the conditions
imposed by Rule 15(c).[5]   *Kilkenny v. Arco Marine, Inc.*, 800 F.2d
853, 856 (9th Cir. 1986).  As amended in 2007 the relevant
provisions of Rule 15(c) state as follows:[6]

---

[4]*See* Mont. Code Ann. § 25-5-103 and Mont. R. Civ. P. 15(c).

[5]The Court will apply the provisions of Fed. R. Civ. P.
15(c)(1), as opposed to Mont. R. Civ. P. 15(c), to all of Hovland's
claims against Harth because Hovland filed her First Amended
Complaint in federal court subsequent to Defendants' removal of
this case from state court.  *Cf. Anderson v. Allstate Ins. Co.*, 630
F.2d 677, 682 (9th Cir. 1980).

[6]The 2007 Amendments did not modify the substance of the
conditions required for an amended pleading to successfully relate
back.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 23

**(c) Relation Back of Amendments.**

 **(1) When an Amendment Relates Back.** An amendment to a pleading relates back to the date of the original pleading when:

 \* \* \*

  **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

  **(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

   **(I)** received such notice of the action that it will not be prejudiced in defending on the merits; and

   **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). *See also Schiavone v. Fortune*, 477 U.S. 21, 29 (1986) (identifying the same substantive conditions). The time period set by Rule 4(m), as referenced in Rule 15(c)(1)(C), is 120 days and the period runs from the date of the filing of the original pleading. *See G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1502 (9th Cir. 1994) and *Yerushalayim v. United States*, 374 F.3d 89, 91 (2nd Cir. 2004).

 In accordance with Fed. R. Civ. P. 15(c)(1)(C), for Hovland's First Amended Complaint to successfully relate back to the filing of her original pleading Hovland would have to, inter

alia, establish that within 120 days of February 1, 2006, Harth
(1) had the requisite notice of the action, and (2) knew that the
action would have been filed against him but for Hovland's
mistake as to his proper identity.

To establish that Harth had notice of the action, Hovland
argues Harth had sufficient notice of the alleged wrongful
conduct which gave rise to her allegations of liability.  The
text of Rule 15(c)(1), however, requires "notice of the action",
not notice of the wrongful conduct.  Hovland's argument fails in
this regard.

Hovland also argues notice of her lawsuit should be imputed
to Harth based on a "community of interest" theory.  Hovland
speculates that due to the small size of the community of Libby
"it is guaranteed that all law enforcement personnel were aware
of the suit."  Hovland's Response at 7.  Relying upon *G.F. Co. v.
Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498 (9th Cir. 1994),
Hovland argues the law enforcement community's notice of her
action was sufficient to give Harth notice of the action.

In *Pan Ocean*, the court recognized the existence of a
"community of interest" between two defendants which allowed one
corporate entity's notice of a lawsuit to be imputed to another
corporate entity.  In that case, the corporate entity plaintiff
named in the original complaint was the known and disclosed agent
of the principal corporate entity which the plaintiff

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 25

subsequently sought to add as a new defendant through an amended pleading.  Additionally, the agent handled the principal's business for 11 years, and both entities had the same attorney. Therefore, the court imputed the agent's notice of the original complaint to the principal corporation since "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other."  *Pan Ocean*, 23 F.3d at 1503 (citation omitted).

Hovland's "community of interest" theory under *Pan Ocean*, however, does not support her assertion that Harth had notice of the original complaint under the circumstances of this case. Hovland's reliance on the law enforcement community's alleged notice of her lawsuit is misplaced, as such circle of colleagues is not the type of "community of interest" recognized under *Pan Ocean*.  There are no facts either in Hovland's pleadings or the record suggesting that the community of law enforcement officers were "so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other."  Hovland's speculation on this matter does nothing to support the theory of imputed notice to Harth.

Hovland also suggests Harth should have known that her lawsuit would have been brought against him, but for her mistake

as to his identity.  She states she was mistaken about Harth's identity or capacity during his presence at the scene of her traffic stop.  Hovland states she "thought Harth was a city cop, rather than a sheriff's deputy, and thus did not name him[]" in her original Complaint.  Hovland's Response at 7.

The "mistake" contemplated under Rule 15(c)(1) must be a mistake as to a defendant's name, or a mistake as to whether a particular person needs to be named as a defendant as a matter of law.  *Yerushalayim*, 374 F.3d at 91-92.  But when a plaintiff has knowledge that a particular person is the one whose actions allegedly gave rise to liability, yet chooses not to name that person as a defendant, then no "mistake" is made for purposes of the relation back rule of Rule 15(c)(1).  *Louisiana-Pacific Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993).  The requisite "mistake" must be one as to the proper identity of the actor, not a mistake as to a choice of the actor to be sued.  *Id*.

Hovland's brief and the allegations of her pleading demonstrate she knew Harth was at the scene of her traffic stop.  Hovland chose, however, not to sue him because she thought he was a city versus county law enforcement officer.  Her election as to who she named as a defendant was not a "mistake" within the contemplation of Rule 15(c)(1).

Hovland also fails to present any information establishing that Harth knew, or should have known, that he would have been a

defendant named in Hovland's original Complaint.  Under the
circumstances of this case, even assuming Harth had notice of
Hovland's original Complaint and discovered he was not named as a
defendant, such discovery could reasonably suggest to him that
Hovland chose not to sue him for tactical or strategic reasons,
and that she did not mistakenly fail to name him as a defendant.
*See Kilkenny v. Arco Marine, Inc.*, 800 F.2d 853, 857 (9th Cir.
1986).  In the absence of reasonable grounds alerting Harth that
he should have been named as a defendant, then the amended
pleading adding Harth does not relate back.  *Id*.

Finally, Rule 15(c)(1) is intended only to assist in
correcting a misnomer, or an improperly named defendant, so that
a plaintiff can substitute the correctly identified defendant in
place of a party already named as a defendant in the complaint.

> Rule 15(c) was intended to protect a plaintiff who
> mistakenly names a party and then discovers, after the
> relevant statute of limitations has run, the identity of the
> proper party.  Rule 15(c) was never intended to assist a
> plaintiff who ignores or fails to respond in a reasonable
> fashion to notice of a potential party[.]

*Kilkenny*, 800 F.2d at 857-58.  The rule is not intended to allow
a plaintiff to simply add a new defendant to the lawsuit after
the applicable period of limitations has expired.  *Braud v.
Transport Services Co. of Illinois*, 445 F.3d 801, 806 n.12 (5th
Cir. 2006).  An amendment does not relate back to the filing of
the original complaint if the newly named defendant is not being
substituted for a party who is already named as a defendant.  *Id*.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 28

Under the circumstances of this case Hovland's First Amended Complaint added Harth as a new Defendant to this action.  Hovland did not substitute Harth in place of some other previously misnamed defendant.

In summary, the allegations advanced against Harth in Hovland's First Amended Complaint filed on October 26, 2007, do not relate back to February 1, 2006, the date Hovland filed her initial complaint.  Accordingly, the Court should conclude that Hovland "commenced" her action against Harth on October 26, 2007, the date she filed her First Amended Complaint advancing claims against Harth for the first time.  Hovland's various claims are barred by the applicable statutes of limitations as discussed above.

**B.   Failure to State a Claim for which Relief Could be Granted**

In addition to the statute of limitations issues, Harth also moves for dismissal of several of Hovland's claims on the grounds the allegations fail to state a valid claim for relief.

**1.   Count 2 - Malicious Prosecution**

A cause of action for malicious prosecution in Montana requires a plaintiff to allege and prove the following six elements:

> (1) a judicial proceeding was commenced and prosecuted against the plaintiff;
>
> (2) the defendant was responsible for instigating, prosecuting or continuing such proceeding;

(3) there was a lack of probable cause for the defendant's acts;

(4) the defendant was actuated by malice;

(5) the judicial proceeding terminated favorably for plaintiff; and

(6) the plaintiff suffered damage.

*Plouffe v. Montana Dept. of Public Health and Human Services*, 2002 MT 64, ¶ 16, 309 Mont. 184, ¶ 16, 45 P.3d 10, ¶ 16.

Harth moves to dismiss Hovland's malicious prosecution claim against him on the grounds that Hovland's allegations do not satisfy each of the six elements of the claim.  Although Hovland sufficiently alleges Harth acted in concert with Gardella with respect to the events which occurred on February 6, 2004, there are no factual allegations that Harth acted in concert with any Defendant relative to Lincoln County's, or Gardella's criminal prosecution of Hovland.  Although Harth participated in Gardella's arrest of Hovland, she specifically alleges that only "Gardella wrongfully and unlawfully charged Plaintiff with five crimes[.]"  Hovland's First Amended Complaint at ¶ 33.  Hovland does not allege Harth had any involvement with the filing of criminal charges against Hovland, and Harth's participation in Gardella's conduct on February 6, 2004, is not sufficient to alleged that Harth acted in concert with Gardella relative to the filing of the criminal charges.  Accordingly, Hovland does not allege any facts indicating Harth was responsible for "instigating, prosecuting or continuing such [judicial]

proceeding[]" and Hovland has failed to alleged facts in support of the second element of her malicious prosecution claim against Harth. *Plouffe*, at ¶ 16.  Count 2 should be dismissed for failure to state a claim for relief.

### 2.   Count 9 - Punitive Damages

In Count 9 of her First Amended Complaint Hovland seeks to hold Harth liable for punitive damages.  As a prerequisite to an award of punitive damages, however, a plaintiff must successfully pursue a meritorious theory for the recovery of actual damages against a defendant.  In the absence of a viable theory of recovery resulting in an award of actual damages against a specific defendant a plaintiff is not entitled to recover punitive damages, and the claim should be dismissed.  *Doll v. Major Muffler Centers, Inc.*, 208 Mont. 401, 414, 687 P.2d 48, 55 (1984).  Because the Court recommends dismissal of all of Hovland's claims against Harth, her claim for punitive damages against him should also be dismissed.

### IV.  CONCLUSION

Based on the forgoing, the Court concludes all of Hovland's claims against Harth should be dismissed.  Her allegations either fail to state a claim on which relief could be granted, or are barred by the applicable statutes of limitations.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 31